299 N.W.2d 687 (1980)
Sam MONTGOMERY et al., Appellants,
v.
BREMER COUNTY BOARD OF SUPERVISORS, Appellee,
Frederick L. Niewohner, Intervenor.
Sam MONTGOMERY et al., Appellants,
v.
BREMER COUNTY BOARD OF SUPERVISORS, Appellee,
Geo. A. Hormel & Co., Intervenor,
Frederick L. Niewohner, Intervenor.
Nos. 64613, 64614.
Supreme Court of Iowa.
December 17, 1980.
*690 David J. Dutton and James R. Hellman of Mosier, Thomas, Beatty, Dutton, Braun & Staack, Waterloo, for appellants.
Paul W. Riffel, Bremer County Atty., for appellee. *691 John Fister of Beecher, Beecher, Holmes & Rathert, Waterloo, for intervenor Niewohner.
Ralph E. Laird of Laird & Laird, Waverly, for intervenor Geo. A. Hormel & Co.
Considered by LeGRAND, P. J., and McCORMICK, McGIVERIN, LARSON and SCHULTZ, JJ.
McGIVERIN, Justice.
In two separate certiorari cases brought to review the defendant Bremer County Board of Supervisors' decisions to rezone two parcels of land from agricultural zone to industrial zone, the district court sustained the actions of the Board. Appeals taken by the objectors to the rezoning were consolidated. We affirm both cases.
The land had been zoned A-1 Agricultural district under the provisions of the 1975 Bremer County Zoning Ordinance. These tracts are located about two and one-half miles northwest of Waverly in Bremer County. The rezoning was prompted by Geo. A. Hormel & Co.'s proposal to erect and operate a hog-slaughtering plant on one tract and the Board's desire to attract other industry to the area. Both parcels are now surrounded by farmland. Plaintiff objectors live in the area of the land.
In one case, Frederick L. Niewohner and Robert and Carolyn Vosseller filed a rezoning petition requesting that the Bremer County Zoning Commission and Board of Supervisors rezone their eighty-acre parcel of land. The owners requested that the land be rezoned to M-Industrial district to allow for industrial development. The zoning commission, acting under section 358A.8, The Code 1979, approved the petition, and pursuant to the Ordinance and section 358A.6 the petition came before the Board for final determination. Proper notice was given and a public hearing was held on February 2, 1979. Both proponents and objectors appeared and presented their views. On February 21 the Board unanimously approved the rezoning request, and amended the Bremer County Zoning Ordinance to provide zoning classification of M-Industrial for the Niewohner-Vosseller property.
In the other case, Hormel acquired an option to purchase from Eldon and Mabel Diercks approximately 100 acres of land located immediately north of the Niewohner-Vosseller land. Hormel and the Diercks also filed a rezoning petition. The zoning commission approved the petition. After notice, a public hearing was held at which proponents and objectors presented extensive evidence. On April 13 the Board unanimously approved this rezoning request, thereby amending the Ordinance and also placing the Diercks-Hormel property in the M-Industrial zoning classification.
Plaintiffs brought separate certiorari actions in district court to review the actions of the Board in each case. Iowa R.Civ.P. 306-319. Writs were issued. Niewohner intervened on the side of the Board in the case affecting his land. Both Hormel and Niewohner intervened on the side of the Board in the case affecting the Diercks' property.
The exhibits, transcripts of hearings, and other papers before the Board were certified to the district court in the returns to the writs. Iowa R.Civ.P. 313. In addition, the court received evidence under Iowa R.Civ.P. 315. After consideration of the transcripts and materials before the Board and the additional evidence, the court annulled the writs and sustained the actions of the Board in each case. Iowa R.Civ.P. 316.
Plaintiffs' separate appeals were consolidated here. Eight of the issues presented are common to both appeals. An issue of nuisance applies only to the Diercks-Hormel land.
The questions presented are:
1. What is the proper scope of review in a certiorari proceeding to challenge a board of supervisors' amendments to a zoning ordinance?
2. Were the objectors denied procedural due process in the public hearing on the rezoning request?
*692 3. In rezoning a tract of land, is a board of supervisors required to make findings of fact to support the decision to rezone?
4. Were the rezonings invalid because the Board failed to provide the manner for changing the boundaries of the zoning districts?
5. Were the rezonings made in accordance with a comprehensive plan?
6. Did the rezoning of farmland to permit industrial uses violate the public policy of Iowa to preserve farmland?
7. Were the rezonings of the land invalid because they are spot zoning?
8. Were the decisions to rezone in these cases arbitrary, capricious or unreasonable?
9. Did the rezoning of the Diercks-Hormel farm to allow construction of a hog-slaughtering operation constitute the creation of a nuisance?
I. Scope of judicial review. Plaintiff neighbors have challenged the Board's amendments to the zoning ordinance by certiorari proceedings. A writ of certiorari is granted where a board, exercising judicial functions, is alleged to have exceeded its jurisdiction or acted illegally. Iowa R.Civ.P. 306. We have broadly defined "judicial functions" for certiorari purposes to include cases where, as here, the challenged action takes place after required notice and an opportunity to be heard. Curtis v. Board of Supervisors, 270 N.W.2d 447, 449 (Iowa 1978). The parties agree that certiorari is the appropriate means to review the Board's actions. See Boomhower v. Cerro Gordo County Board of Adjustment, 163 N.W.2d 75, 77 (Iowa 1968).
We next consider the proper scope of review. The court stated it would uphold the zoning ordinance amendments if their reasonableness was fairly debatable.
In a certiorari proceeding, unless modified by statute or constitutional principle, a court's scope of review is limited. A board's action must be upheld if supported by any competent and substantial evidence. Carstensen v. Board of Trustees, 253 N.W.2d 560, 562 (Iowa 1977).
This limited review has not been modified in this case by any statute or constitutional principle. We have held that the district court, in reviewing actions of a board of adjustment, must find facts anew. Weldon v. Zoning Board, 250 N.W.2d 396, 401 (Iowa 1977). This exception to the usually limited scope of review in a certiorari proceeding was required by the statutes, sections 358A.21, 414.18, The Code, governing judicial review of decisions of the board of adjustment. Weldon, 250 N.W.2d at 400. There are no similar statutes governing review of the zoning decisions of the board of supervisors.
The neighbors also say that since they claim a denial of procedural due process in the hearings before the Board, the usually limited review in certiorari proceedings should not apply. While the constitutional claim requires a court to make a de novo review of the evidence bearing on that claim, the fact that one of the claims involves a constitutional question arising out of the hearings does not require the court to find facts anew on the underlying decisions to rezone.
Zoning decisions are an exercise of the police power to promote the health, safety, order and morals of society. Anderson v. City of Cedar Rapids, 168 N.W.2d 739, 742 (Iowa 1969). In reviewing amendments to zoning ordinances, we presume they are valid and if their reasonableness is fairly debatable, we will not substitute our judgment for that of the legislative body. Jaffe v. City of Davenport, 179 N.W.2d 554, 555 (Iowa 1970).
We agree with the trial court and conclude the generally limited scope of review applicable to this case is to determine whether the decision by the Board to rezone is fairly debatable. We review the evidence and other issues in that light.
II. Procedural due process at the public hearings. Plaintiffs claim they were denied procedural due process at the hearings before the Board on each petition for rezoning. They do not claim lack of proper notice of the hearings. Plaintiffs assert: (1) *693 the Board was not an impartial decisionmaker; (2) the Board did not allow the objectors to question the applicants or members of the Board; (3) the Board questioned the validity of some of plaintiffs' evidence; and (4) in the Diercks-Hormel case, the Board conducted an outside investigation of Hormel operations and considered evidence not presented at the hearing.
Based on the transcripts, exhibits and papers certified by the defendant Board, and the evidence presented at the district court hearings, the court concluded the Board based its decisions solely on evidence presented at the Board hearings and that the individual members of the Board approached the hearings with an open mind. Before the Board hearings, two of the supervisors along with several other Bremer County citizens viewed the Hormel plant at Ottumwa at the invitation of Hormel. Also all three supervisors visited the Hormel plant at Fort Dodge at the request of plaintiff objectors. At the court hearing, one supervisor testified that he and the other board members were not biased by those visits before the Board hearing. From our de novo review of the record bearing on this claim, we agree with these conclusions of the district court. Therefore, we need not decide whether the Board could have properly based its decision on information gathered outside of the hearing on the amendment to the zoning ordinance.
Sections 358A.6, The Code 1979, provides in part that a zoning ordinance cannot be established or amended by a board of supervisors "until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard." The parties' basic disagreement is over the type of hearing required. The neighbors say that procedural due process and section 358A.6 entitle them to a formal, evidentiary hearing. This type of hearing "connotes rights to confrontation, cross examination, and the making of a formal record on the exclusive basis of which the validity of the [rezoning] will later stand or fall in any judicial proceeding." Bonfield, The Iowa Administrative Procedure Act: Background, Construction, Applicability, Public Access to Agency Law, the Rulemaking Process, 60 Iowa L.Rev. 731, 853 (1975). The Board contends that in making a decision to rezone, due process and the statute merely require an argument-type hearing to help them determine law or policy. This type of hearing involves "an opportunity for persons to present data and arguments orally to the [Board] in an effort to communicate their views more effectively than they could in writing." Id. This is a much more informal process than an evidentiary hearing.
We hold that the type of hearing contemplated by section 358A.6 is of the comment-argument type. In rezoning, the Board is exercising a legislative function. Boomhower, 163 N.W.2d at 77. The purpose of the statutory hearing is primarily to aid the Board in gathering information to discharge the legislative function. 8A E. McQuillin, The Law of Municipal Corporations § 25.251 (3d ed. 1976). Its goal is to gather "legislative facts-generalized propositions of fact or policy guiding the exercise of legislative judgment." Bonfield, The Definition of Formal Agency Adjudication Under the Iowa Administrative Procedure Act, 62 Iowa L.Rev. 285, 288 (1977).
We also do not find that procedural due process requires a formal evidentiary hearing before the Board. Even if we assume that neighbors to a rezoned area have a life, liberty or property interest which requires some kind of hearing, the statutorily required comment-argument hearing that was afforded in this case is sufficient to meet due process. See Hart v. Bayless Investment & Trading Co., 86 Ariz. 379, 389, 346 P.2d 1101, 1108 (1959); Krimendahl v. Common Council, 256 Ind. 191, 198, 267 N.E.2d 547, 551 (1971); Hyson v. Montgomery County Council, 242 Md. 55, 77, 217 A.2d 578, 593 (1966) (Barnes, J., concurring); Barber v. Town of North Kingston, 118 R.I. 169, 176, 372 A.2d 1269, 1272 (1977).
The record shows that at the public hearings all persons present were given adequate *694 opportunity to inform the Board of their opinions and present evidence for and against the proposed rezoning. First, all the persons favoring the rezoning were allowed to speak. Then all of the objectors and their witnesses were heard. In the Diercks-Hormel case the Board allowed cross-examination of speakers for rezoning after they had all finished. Plaintiffs complain they were not allowed to cross-examine each speaker after he finished.
The Board did ask questions of some speakers to clarify information or points presented. The Board did not allow plaintiffs to cross-examine Board members at the hearings.
We conclude that plaintiff objectors and other interested parties and citizens were afforded fair legislative public hearings at which they had an opportunity to be heard and object. § 358A.6.
Plaintiffs were not denied procedural due process in the hearings.
III. Necessity of findings of fact by Board. The objectors claim that before rezoning, procedural due process requires the Board to make specific findings of facts to support its decision to rezone. We decline to impose a requirement of making findings of fact on the Board.
The objectors claim that findings of fact are required because the Board was exercising a quasi-judicial function. As stated in Division I, for purposes of determining whether certiorari was available under Iowa R.Civ.P. 306, the Board was exercising a quasi-judicial function. However, as explained in Division II, the essential nature of the decision to rezone is legislative and the hearing before the Board was of the comment-argument type. The Board is not determining adjudicative facts to decide the legal rights, privileges or duties of a particular party based on that party's particular circumstances. Therefore, cases cited by the objectors, such as Wolff v, McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), that deal with agencies acting quasi-judicially are not controlling. In the hearing on the rezoning, the Board is gathering information upon which to base its judgment. "[T]here is normally no requirement that agencies establish the necessary legislative facts as a precondition to their action." Bonfield, The Definition of Formal Agency Adjudication Under the Iowa Administrative Procedure Act, 63 Iowa L.Rev. 285, 323 n.115 (1977). Compare Erb v. Iowa State Board of Public Instruction, 216 N.W.2d 339, 342 (Iowa 1974) (even before administrative procedure act, board is required to make findings of fact in adjudicatory proceeding to revoke teaching certificate) with Dunphy v. City Council, 256 N.W.2d 913, 920 (Iowa 1977) (city council not required as a matter of law to make findings of fact in overruling objections voiced at public hearing to legislative decision to remodel depot).
There was no error in the Board's failure to make findings of fact.
IV. Rules on manner of rezoning. Section 358A.6 requires the Board to "provide for the manner in which... the boundaries of such districts shall be... amended." The neighbors contend that the Board did not comply with this provision and therefore its decisions to rezone are invalid. We conclude that section 358A.6 merely requires the Board to adopt rules, which it did here in the zoning ordinance, on the procedure to follow to change the zoning.
The neighbors argue that the Board is required to adopt substantive rules or guidelines to define what factors it will consider in rezoning. They analogize to our decisions requiring the board of adjustment to have substantive standards to guide its actions as required by section 358A.12. Schultz v. Board of Adjustment, 258 Iowa 804, 807, 139 N.W.2d 448, 450 (1966).
The requirement that boards of adjustment have substantive rules to guide its decisionmaking is based on the idea that the board of adjustment is exercising a quasi-judicial function. Boomhower, 163 N.W.2d at 77; Schultz, 258 Iowa at 807, 139 N.W.2d *695 at 450. The board of adjustment is designed to prevent injustice to property owners who do not fit into the zoning ordinance adopted by the board of supervisors. Boomhower, 163 N.W.2d at 77. In contrast, the board of supervisors, in amending a zoning ordinance, is exercising its legislative discretion. Id. Requiring a board to adopt substantive rules to guide its discretion would be an unnecessary burden. The requirement in section 358A.6 that the board of supervisors provide a "manner" for amending the zoning ordinance applies to procedural guidelines. Since the Bremer County Zoning Ordinance had detailed provisions on the method for securing a rezoning, the Board has complied with section 358A.6.
V. Comprehensive Plan. Section 358A.5, The Code 1979, requires that zoning decisions "be made in accordance with a comprehensive plan." The neighbors contend that the decision to rezone this land did not meet this requirement. We disagree.
Deciding whether a decision to rezone has been made in accordance with a comprehensive plan is troublesome. Zoning is not static. Anderson, 168 N.W.2d at 743. If the Board gave full consideration to the problem presented, including the needs of the public, changing conditions, and the similarity of other land in the same area, then it has zoned in accordance with a comprehensive plan. Keppy v. Ehlers, 253 Iowa 1021, 1023, 115 N.W.2d 198, 200 (1962); Vestal, Iowa Land Use and Zoning Law, § 3.01(d) (1979).
The neighbors say that the rezoning of this land was solely the result of the request by Hormel. We have said that rezoning that is largely the result of an application to rezone and done without full consideration of the entire area is evidence of lack of a comprehensive plan. Keppy, 253 Iowa at 1023, 115 N.W.2d at 200. On the record in this case, however, we cannot conclude that the Board irrationally rezoned this land merely because an application had been made.
The neighbors say that since the land, and the area around it, have historically been used and zoned agriculturally, the change to allow industrial uses is invalid. There was evidence that the Board had never considered the area for industrial development. When enacted, the Bremer County Comprehensive Zoning Plan said the general use for the area would be agricultural, and that "demand for development of any other nature would be negligible."
Merely because the Board did not predict then that the specific tracts involved here could be used industrially does not mean the Board is acting without a comprehensive plan now. While the rezoning was prompted by the request from Hormel, the Board did not merely rubberstamp the request. The Board considered the unique suitability of the land for industrial development because of access to roads, railroads, water and high power lines.
The fact that the land had been zoned and used agriculturally did not show a lack of comprehensive plan in deciding to rezone. There was evidence that the land was not particularly well suited for agricultural use. The previous classification of the land as agricultural, the most restrictive classification, was designed to limit other uses in the county until the Board could consider specific rezoning requests. The agricultural zone was not designed to preclude future industrial uses.
The Bremer County Comprehensive Plan stated a goal of "balancing out" agricultural employment opportunities with nonagricultural employment. The Plan discussed the significance of manufacturing to the economy of Bremer County. Along with manufacturing come jobs, capital investment and tax revenue. The Plan also recognized that processing of commodities was a "keystone" of the economy. We conclude that the Board has rationally decided to rezone this land to further these goals in accordance with a comprehensive plan.
VI. Public Policy. The neighbors urge us to invalidate the rezoning because it violates this state's public policy of preserving farmland.
*696 This state has a vital public interest in preserving the open spaces devoted to agriculture. Agriculture is our leading industry. Benschoter v. Hakes, 232 Iowa 1354, 1362, 8 N.W.2d 481, 486 (1943). Good stewardship requires us to protect our land and soil for future generations. Woodbury County Soil Conservation District v. Ortner, 279 N.W.2d 276, 278 (Iowa 1979); § 467A.2, The Code.
The neighbors say that by rezoning this property the Board has violated this public policy. They would rather see this development occur in areas of the county, specifically in or near Waverly, that are already zoned for industrial uses.
We are sympathetic to this argument, and if we were the original decisionmaker we might have preferred to see this zoning occur without removing any farmland from production. We cannot, however, impose our view of better public policy on the Board. There was evidence before the Board that this land is not particularly well suited for agriculture. Representatives of Hormel stated that the Diercks' property was the only Bremer county land in which they were interested. There was evidence that other industrially zoned land, including the industrial park in Waverly, had "serious limitations." Once we find a rational basis for the decision, our review ends. Our role is not to dictate choice of location. Anderson, 168 N.W.2d at 744. That is usually a legislative decision for the Board.
VII. Spot zoning. The objectors contend the Board's actions constituted illegal spot zoning. Spot zoning results when a rezoning "creates a small island of property with restrictions on its use different from those imposed on surrounding property." Jaffe, 179 N.W.2d at 556. While courts disfavor it, it is not necessarily illegal. Id. Spot zoning is valid if there is a reasonable basis for it considering the size of the spot zoned, prior use of the property, its suitability for various uses, and the uses of the surrounding property. Id. Applying these general principles to this case leads to our conclusion that the Board has not illegally spot zoned.
When dealing with county zoning, with wide open spaces as opposed to the relatively congested urban areas, the size of the spot zoned is less important in determining if there is illegal spot zoning. Keppy, 253 Iowa at 1024, 115 N.W.2d at 200. We note that these cases involve a sizable piece of land-approximately 180 acres.
Whether the land is similar in character and use to the surrounding area is primarily for the Board to decide. Keller v. City of Council Bluffs, 246 Iowa 202, 206-07, 66 N.W.2d 113, 116 (1954). If a reasonable board could conclude that the land is different, we will uphold the decision to rezone. Id. It is fairly debatable that this land is distinguishable from the rest of the land in the area.
The rezoned land, like the surrounding area, has primarily been used for agricultural purposes. There was evidence, however, that unlike other farmland, the land rezoned was not prime land. The Niewohner property was renting for $30 an acre and at least twenty acres "produced nothing but sand burrs." The trial court concluded that there were differences which distinguished the two farms from surrounding farms. The Niewohner-Vosseller farm, in addition to being less suitable for farming, also was near a blacktop road, a river and railroad tracks. The Diercks' land shares these characteristics and was also at the intersection of two paved highways. The objectors said that other less desirable farms had similar road, railroad and river access. While other land shared some of these attributes, a reasonable board member could conclude that the property the Board rezoned was best suited to meet the need for industrial development while leaving the rest of the area zoned agriculturally.
VIII. Rezoning as arbitrary, capricious or unreasonable. The neighbors say that the decision to rezone is an irrational exercise of legislative discretion without any evidentiary support. They say the Board did not answer all of their questions about the propriety of the rezoning.
*697 It would unnecessarily extend this opinion to reiterate the arguments for and against the rezoning. Our review of the record, as indicated in other divisions of this opinion, indicates that there was a rational basis for the decision to rezone.
IX. Creation of a nuisance by rezoning Diercks-Hormel land. Plaintiff objectors assert that rezoning of the Diercks-Hormel land, which will allow a hog-slaughtering operation, constitutes the creation of a nuisance because their evidence indicated that the operation might jeopardize farming operations on neighboring property. This contention was alleged in plaintiffs' petition for certiorari, but was not specifically ruled on by the district court. We assume from the unfavorable judgment that the issue was determined adversely to plaintiffs. Fort Dodge Country Club v. Iowa-Illinois Gas and Electric Co., 231 N.W.2d 595, 597 (Iowa 1975); Grall v. Meyer, 173 N.W.2d 61, 65, 38 A.L.R.3d 412, 418 (Iowa 1969). Therefore, we regard any error as preserved.
A governmental body cannot, by zoning an industrial district, authorize the creation or maintenance of a nuisance. Schlotfelt v. Vinton Farmers' Supply Co., 252 Iowa 1102, 1108, 109 N.W.2d 695, 698 (1961). Nuisance is defined in sections 657.1 and .2, The Code 1979.
Plaintiffs contended the proposed Hormel operation would increase traffic and create noise, order, water, and air pollution in the area. They also presented evidence that the concentration of livestock would increase the likelihood of swine disease that could spread to herds of swine on adjacent farms. Thus, plaintiffs say a nuisance would be created by the rezoning.
On the other hand, Hormel presented extensive evidence of their methods for minimizing or eliminating noise, odor, water, and air pollution in their existing plants and being a good neighbor to the surrounding area. They proposed to do the same in a Bremer County operation. Admittedly, there would be an increase in traffic due to vehicles conveying employees and guests as well as livestock to the plant site.
On the potential for disease, Dr. D. D. McCracken of the Iowa Department of Agriculture, a veterinarian, testified. His responsibilities are in meat and poultry inspection and animal health and disease control. He stated, "We find no evidence that packing plants contribute to the spread of disease nor do we have evidence that the location of packing plants contributes to disease incidence in a particular county or area." Of course, whether a nuisance exists depends upon the unreasonableness of the condition in the place and under the circumstances in question. A major factor in determining reasonableness is "the character and gravity of the resulting injury rather than the injury threatened." Ryan v. City of Emmetsburg, 232 Iowa 600, 605, 4 N.W.2d 435, 439 (1942).
The Board indicated its empathy for plaintiffs' concerns but concluded that permits and controls of the Iowa Department of Environmental Quality and other environmental protection agencies should be adequate if future problems arose. In addition, injunctive relief would be available to abate any nuisance that might arise.
There was substantial evidence that the establishment of the proposed packing plant would not create a nuisance. Therefore, we hold the Board, by rezoning the Diercks farm as industrial, did not, as a matter of law, authorize the creation of a nuisance.
There is no error in this assignment.
We have considered the many contentions of the parties, whether or not specifically discussed, and find no error in the results reached by the district court in each of these cases.
Both cases are affirmed.
AFFIRMED ON BOTH CASES.
All Justices concur except SCHULTZ, J., who dissents.
SCHULTZ, Justice (dissenting).
I believe that the amendment to Bremer County's zoning ordinance at issue in this *698 case constituted illegal spot zoning. While spot zoning is not per se illegal in this state, to be valid it must be reasonable and in accordance with a municipality's comprehensive plan. "If the ordinance constitutes piecemeal or haphazard zoning of a small tract of land similar in character and use to the surrounding property for the benefit of the owner and not pursuant to a comprehensive plan for the general welfare of the community, it is arbitrary, unreasonable and invalid." Jaffe v. City of Davenport, 179 N.W.2d 554, 556 (Iowa 1970). There must be substantial and reasonable grounds for discrimination caused by singling out a particular tract and removing a restriction therefrom that applies to like surrounding land within the same zoning district. Keppy v. Ehlers, 253 Iowa 1021, 1023, 115 N.W.2d 198, 200 (1962).
Although the determination of whether a particular tract of land is substantially different from surrounding property is an exercise of the police power and therefore was a legislative matter within the discretion of the Board of Supervisors, I believe the record here reveals only slight differences between the tract at issue and the surrounding land. It appears obvious that the tract was reclassified for the exclusive benefit of one industrial user. The majority states that the previous, agricultural classification was designed to limit other uses until the Board could consider specific zoning requests. Such piecemeal rezoning is diametrically opposed to the purpose of requiring a comprehensive plan. Allowing individual requests for rezoning erodes a comprehensive plan and destroys the purpose of zoning. I would reverse.