# IN THE COURT OF APPEALS OF IOWA

No. 22-0314
Filed December 7, 2022

**JAMES FETTKETHER and CANDICE FETTKETHER,**
    Plaintiffs-Appellants,

**vs.**

**GRUNDY COUNTY BOARD OF SUPERVISORS, BARBARA SMITH, CHARLES BAKKER, HEIDI NEDERHOFF, JAMES ROSS, and MARK SCHILDROTH,**
    Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Grundy County, David P. Odekirk, Judge.


        James and Candice Fettkether challenge the Grundy County Board of Supervisors' denial of their request for rezoning.  **AFFIRMED.**


        Louis R. Hockenberg and Colin C. Smith of Sullivan & Ward, P.C., West Des Moines, for appellants.

        Hugh J. Cain, Brent L. Hinders, and Eric M. Updegraff of Hopkins & Huebner, P.C., Des Moines, for appellees.


        Considered by Bower, C.J., Tabor, J., and Carr, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**BOWER, Chief Judge.**

James and Candice Fettkether brought a certiorari action in the district court, claiming the Grundy County Board of Supervisors (the Board) acted illegally and unreasonably in denying their request for rezoning twelve and one-half acres of their land from A-1 agriculture district to R-2 suburban residence district. The district court granted summary judgment to the Board, and the Fettkethers appeal. Because the Board did not act illegally, its decision was supported by substantial evidence, and its action was not unreasonable, arbitrary, or capricious, we affirm the annulment of the writ of certiorari.

**I. Background Facts and Proceedings.**

We borrow the district court's statement of undisputed facts.

> On May 13, 2020, James and Candice Fettkether applied for rezoning of property located at 13668 V Avenue, Cedar Falls, Iowa. The application stated the existing use of the property was a single family residence with an existing zoning classification of A-1, Agricultural District. In their application, [the Fettkethers] proposed a zoning classification of "R-2, Suburban Residence District," for "[four] additional single family residences." The [Fettkethers] were required to list all property owners within 500 feet of the property to be rezoned by the application.
>
> The Grundy County Planning and Zoning Commission ("Commission") met on July 27, 2020, to consider the [Fettkethers'] rezoning application. Mr. Fettkether and his attorney, Chris Rousch, appeared at said meeting and spoke in favor of this rezoning request. Public comment was received during that meeting and several individuals spoke against the request. The Commission voted unanimously against approving the [Fettkethers'] request to rezone the property from A1 to R2.
>
> On August 11, 2020, [the Fettkethers] emailed Zoning Administrator Carie Steinbron, seeking to "table" the vote by the [Board] and also requesting a Land Evaluation Site Assessment ("LESA") be conducted before the review of the [Fettkethers'] rezoning application. Steinbron forwarded the message on to the supervisors and County Attorney Erika Allen.
>
> On August 14, 2020, public notice was published in the Sun Courier, a weekly newspaper circulated in Grundy County, Iowa,

concerning the public hearing on the [Fettkethers'] rezoning request. Another public notice of said public hearing was published on August 20, 2020, in the Grundy Register, a weekly newspaper published in Grundy Center, Grundy County, Iowa.

On August 24, 2020, [the Board] met in regular session and considered the [Fettkethers'] rezoning application. The Ordinance for the rezoning was defeated by a vote of 4-1 with supervisor Ross vot[ing] in favor while supervisor Bakker, Nederhoff, Schildroth, and Smith vot[ing] against.

The Fettkethers filed a petition for writ of certiorari in the district court alleging the Board acted illegally in failing to give adequate notice and opportunity to be heard, the Board's decision was not supported by substantial evidence, and the Board's action was unreasonable, arbitrary, and capricious. The district court granted the Board's resisted motion for summary judgment and annulled the writ of certiorari.

The Fettkethers appeal the annulment of the writ. They claim the district court erred in finding the Board was not required to make written findings, substantial evidence supported the zoning decision, and the Board's actions were not illegal, unreasonable, arbitrary, or capricious. They contend summary judgment was premature because additional discovery was necessary.

**II. General Principles of Certiorari.**

Certiorari actions are governed by Iowa Rules of Civil Procedure 1.1401 through 1.411. A party may present a certiorari action "when authorized by a statute or when an 'inferior tribunal, board, or officer' exceeded its jurisdiction or otherwise acted illegally in executing judicial functions." *Bowman v. City of Des Moines Mun. Hous. Agency*, 805 N.W.2d 790, 796 (Iowa 2011) (quoting Iowa R. Civ. P. 1.1401).

"[T]he relief by way of certiorari shall be strictly limited to questions of jurisdiction or the legality of the challenged acts, unless otherwise provided by statute." Iowa R. Civ. P. 1.1403.

Under Iowa Rule of Civil Procedure 1.1410:

> When full return has been made, the court shall fix a time and place for hearing. In addition to the record made by the return, the court may receive any transcript or recording of the original proceeding and such other oral or written evidence explaining the matters contained in the return. Unless otherwise specially provided by statute, such transcript, recording, or additional evidence shall be considered only to determine the legality of the proceedings or the sufficiency of the evidence before the original tribunal, board, officer, or magistrate.

**III. Standard of Review.**

Both parties state our review of the Board's findings is de novo, citing *Bontrager Auto Serv., Inc. v. Iowa Bd. of Adjustment*, 748 N.W.2d 483 (Iowa 2008), a case in which objectors filed petitions for writs of certiorari regarding the city board of adjustment's decision. But *Bontrager* notes, "Unlike the typical certiorari case, in which the standard of review is well established, the review of decisions of boards of adjustment has always been somewhat problematic. Iowa Code chapter 414 [(2020)] provides the procedure for review of a decision of a city board of adjustment." 748 N.W.2d at 490.

Here, we are reviewing a "typical certiorari case in which the standard of review is well established." *Id.* "In a certiorari proceeding, unless modified by statute or constitutional principle, a court's scope of review is limited." *Montgomery v. Bremer Cnty. Bd. of Supervisors*, 299 N.W.2d 687, 692 (Iowa 1980) (hereinafter

*Montgomery*).[1]  We review for the correction of errors at law.  *Vance v. Iowa Dist. Ct.*, 907 N.W.2d 473, 476 (Iowa 2018).

> A party may present a certiorari action when authorized by a statute or when an inferior tribunal, board, or officer exceeded its jurisdiction or otherwise acted illegally in executing judicial functions.  An inferior tribunal commits an illegality if the decision violates a statute, is not supported by substantial evidence, or is unreasonable, arbitrary, or capricious.

*Ames 2304, LLC v. City of Ames*, 924 N.W.2d 863, 867 (Iowa 2019) (internal quotation marks and citations omitted).

So, too, we review grants of summary judgment for corrections of errors of law.  *Alta Vista Props., LLC v. Mauer Vision Ctr., PC*, 855 N.W.2d 722, 726 (Iowa 2014.  "Summary judgment is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *Rand v. Sec. Nat'l Corp.*, 974 N.W.2d 87, 90 (Iowa 2022) (citation omitted).

**IV. Discussion.**

*Written findings of fact.*  The Fettkethers are adamant in their claim the Board must make written findings of fact.  Again, they rely on *Bontrager*.  The Iowa Supreme Court has recognized the requirement that boards of adjustment must make "written findings of fact on all issues presented in any adjudicatory proceeding."  *Bontrager*, 748 N.W.2d at 488 (citation omitted).  In *Bontrager*, the court noted the Iowa City Board of Adjustment was required by city ordinances "to render its decision in writing, 'including findings of fact and conclusions of law.'"  *Id.* at 487.  The *Bontrager* court stated, "The Iowa City ordinance codifies the rule

---

[1] The *Montgomery* court noted the limited review is modified by statute when reviewing actions of a *board of adjustment*.  299 N.W.2d at 692.

adopted by our court 'that boards of adjustment shall make written findings of fact on all issues presented in any adjudicatory proceeding.'" *Id.* at 487 (quoting *Citizens Against the Lewis & Clark (Mowery) Landfill v. Pottawattamie Cnty. Bd. of Adjustment*, 277 N.W.2d 921, 925 (Iowa 1979)).

Yet, our supreme court has not extended its board-of-adjustment rule for written findings of fact in any adjudicatory proceeding to a board of supervisors' *legislative* proceedings.[2] *See Mensen v. Cedar Rapids Civ. Serv. Comm'n*, No. 21-0410, 2022 WL 2160679, at *4 (Iowa Ct. App. June 15, 2022). ("Mensen asks us to utilize [*Bontrager* and other board-of-adjustment] cases to declare municipal civil service commissions must issue written findings of fact and law with some level of specificity. However, Mensen concedes his claim requires this court to extend case law beyond its current scope. It is not the proper role for this court to create new law.").

> Our legislature has given a county board of supervisors the authority over county zoning matters. *See* Iowa Code §§ 335.3, 335.6. This authority includes the power to designate areas of the county into districts and to regulate the use of property within those districts. *Se id.* §§ 335.3, 335.4. Iowa Code section 335.6 provides:
>> The board of supervisors shall provide for the manner in which the regulations and restrictions and the boundaries of the districts shall be determined, established, and enforced, and from time to time amended, supplemented, or changed. However, the regulation, restriction, or boundary shall not become effective until after a public hearing, at which parties in interest and citizens shall have an opportunity to be heard. Notice of the time and place of the hearing shall be published as provided in section 331.305. The notice shall state the location of the district affected by naming the township and section, and the boundaries

---

[2] *See Little v. Winborn*, 518 N.W.2d 384, 386 (Iowa 1994) ("Under our zoning law the zoning commission is the recommending body and the board of supervisors is the legislative body.").

> > of the district shall be expressed in terms of streets or roads if possible. The regulation, restriction, or boundary shall be adopted in compliance with section 331.302.
>
> Pursuant to section 335.6, a county board of supervisors cannot exercise powers granted to it by the legislature over zoning matters until the specified statutory procedural requirements are satisfied. Specifically, the board must publish notice of such action at least once, not less than four and not more than twenty days before the date of the hearing, in one or more newspapers which meet the requirements of Iowa Code section 618.14. *See id.* § 331.305. These public notice and hearing requirements apply equally to all zoning changes or amendments. *See id.* § 335.7.

*Osage Conservation Club v. Bd. of Supervisors*, 611 N.W.2d 294, 297 (Iowa 2000) (emphasis omitted). "The comment-argument format cannot be confused with the evidentiary-adjudicatory hearing found in the board of adjustment setting, where findings and conclusions are mandatory." *Kading Props., LLC v. City of Indianola*, No. 21-0642, 2022 WL 951141, at *3 (Iowa Ct. App. Mar. 31, 2022) (citing *Montgomery*, 299 N.W.2d at 693–94)).

> The objectors claim that findings of fact are required because the Board was exercising a quasi-judicial function. . . . [F]or purposes of determining whether certiorari was available under [rule 1.1401], the Board was exercising a quasi-judicial function. However, . . . the essential nature of the decision to rezone is legislative and the hearing before the Board was of the comment-argument type. The Board is not determining adjudicative facts to decide the legal rights, privileges or duties of a particular party based on that party's particular circumstances. Therefore, cases cited by the objectors, . . . that deal with agencies acting quasi-judicially are not controlling. In the hearing on the rezoning, the Board is gathering information upon which to base its judgment. "[T]here is normally no requirement that agencies establish the necessary legislative facts as a precondition to their action." [Arthur E.] Bonfield, *The Definition of Formal Agency Adjudication Under the Iowa Administrative Procedure Act*, 63 Iowa L. Rev. 285, 323 n.115 (1977). *Compare Erb v. Iowa State Bd. of Pub. Instruction*, 216 N.W.2d 339, 342 (Iowa 1974) ([noting] even before administrative procedure act, board is required to make findings of fact in adjudicatory proceeding to revoke teaching certificate), *with Dunphy v. City Council*, 256 N.W.2d 913, 920 (Iowa 1977) ([stating] city council not required as a matter of law

> to make findings of fact in overruling objections voiced at public hearing to legislative decision to remodel depot).
>
> There was no error in the Board's failure to make findings of fact.

*Montgomery*, 299 N.W.2d at 694 (third alteration in the original).  Written findings of fact were not required by the board of supervisors here.

*Substantial evidence exists to support the Board's decision.*  The Fettkethers contend there is not substantial evidence to support the Board's decision; but, again, their focus is on the lack of written findings.  They assert that in the absence of written findings of fact and rationale, "no [substantial evidence decision] can withstand appellate scrutiny."

"Zoning decisions are entitled to a strong presumption of validity."  *Quality Refrigerated Servs., Inc.* v. *City of Spencer*, 586 N.W.2d 202, 207 (Iowa 1998).  A party challenging a zoning decision bears the burden of showing the decision was "unreasonable, arbitrary, capricious or discriminatory, with no reasonable relationship to the promotion of public health, safety, or welfare."  *Id.* (quoting *Shriver v. City of Okoboji*, 567 N.W.2d 397, 401 (Iowa 1997)).  "The court will not substitute its judgment for that of the zoning authority.  Thus, if the reasonableness of the zoning decision is fairly debatable and the decision is facially valid, the court will not interfere with the [Board's] action."  *Id.* at 207–08 (internal citation omitted).

In the district court, the Board filed a motion for summary judgment, stating the writ return of the record was complete and "[a]s established by the record, the [Board is] entitled to summary judgment" as it had "neither acted illegally nor exceeded [its] proper jurisdiction."

The Fettkethers's resistance states, "Material facts are disputed regarding whether legally-required written findings of fact and rationale were prepared by [the Board] during the proceedings below." This underlying premise—that the Board was legally required to provide written findings of fact and rationale—is necessary to all their other claims of disputed facts. But we have already addressed that premise and found it faulty.

We have before us the complete record presented to the district court.[3] As noted by the district court, proper notice of the hearing on the Fettkethers' request for rezoning was given and the Board held a hearing at which the Fettkethers had an opportunity to be heard.[4]

The minutes of the Board's decision on the Fettkethers' request for rezoning is summarized in the minutes of the August 24 hearing:

> At 9:01 a.m., the chairperson opened the public hearing regarding Amendment to Ordinance No. 2009-5. No one spoke in favor of the amendment. Darrell Sloth opposed the amendment as he believed it would create a precedent for other housing districts. He said that it would create congestion, dust, and noise from more houses in the area. John Oltman opposed the amendment as this area is a woodland and habitat for wildlife, including owls. He said that the proposed site is on a gravel road, has eight residences currently, is dusty, and could create a precedent that would get out of hand. Michael Thomas opposed the amendment as he believes that the land should remain agricultural. He said that there is no need for additional housing in a rural area and that housing developments do not belong on a gravel road and should only be allowed within

[3] The Fettkethers claim the motion for summary judgment is premature because additional discovery is needed. But they have failed to explain what facts are sought and how those facts would preclude summary judgment, which is sufficient to reject a claim that the opportunity for discover was inadequate. *See Bitner v. Ottumwa Cmty. Sch. Dist.*, 549 N.W.2d 295, 301–02 (Iowa 1996); *accord Winesberry v. State*, No. 15-2058, 2017 WL 3524719, at *2 (Iowa Ct. App. Aug. 16, 2017).

[4] While we acknowledge the Fettkethers sent an email requesting their rezoning application be tabled, the Board did not act on that emailed request.

one mile of a town. A telephone message from Frank Dargan and an email from Richard and MaeLynne Dean opposing the amendment were also read. The chairperson closed the hearing.

Motion was made by Schildroth and seconded by Bakker to accept the first reading of Ordinance #2021-1, an Ordinance amending Ordinance No. 2009-5. Supervisor Ross stated that he did not understand why those that are currently living in the area are opposed to having more residences built. Supervisor Smith stated that she is in favor of development, generally, but she does not believe that a subdivision on a gravel road should be encouraged. Supervisor Schildroth stated that previously he had voted twice to deny this amendment[5] and that he had not heard anything today that would change his position. Roll call vote was as follows: Ayes—Ross. Nays—Bakker, Nederhoff, Schildroth, and Smith. Ordinance defeated.

The comments made to the Board were similar to those made to the Commission in July—after which the rezoning proposal was unanimously rejected—relaying concerns related to traffic, dust, safety, character of the area, preservation of habitat, preservation of agricultural land, location of the development, and access through a narrow bridge.

Also before us is the Grundy County Comprehensive Plan, which establishes three development principles and goals: First, "[p]reserve high quality agricultural land while not prohibiting development from occurring in any portion of the County." Second, "[e]ncourage commercial and industrial growth along Highway 20." And third, "[p]reserve natural resource areas and enhance parks and trails."

The Plan urges the adoption of six policies to support of the goal of preserving high quality agricultural land while not prohibiting growth: (1) "Encourage growth and development in areas with a C.S.R. [corn suitability

_____

[5] It appears the Fettkethers' application had been submitted in 2018 and was resubmitted in 2020.

rating] that is below [eighty]." (2) "Encourage growth and development within or adjacent to existing municipalities." (3) "Encourage growth and development along paved roads and highways." (4) "Maintain a [thirty-five]-acre minimum lot size for dwellings in agricultural areas with C.S.R. rates above [eighty]." (5) "Allow complimentary uses of similar density to be developed in the vicinity of existing developments." (6) "Encourage quarter, quarter sections with more than [five] houses to be rezoned residential."

The Fettkethers' proposal that their property be rezoned from an A-1 Agricultural District to a R-2 Suburban Residence District[6] is contraindicated by at least two of the policies—it is not within or adjacent to an existing municipality and it is not on a paved road. The comments the Board heard—relating to traffic, dust, safety, the character of the area, preservation of habitat, preservation of agricultural land, location of the development, and access—have a substantial

---

[6] The intent of A-1 Agricultural District zoning is stated in Grundy County, Iowa, Development Ordinance Number 2009-5:

> The "A-1" Agricultural District is intended and designed to serve the agricultural community and protect agricultural land from encroachment of urban land uses. Furthermore, in accordance with chapters 335 and 352, Code of Iowa, as amended, it is the intent to preserve the availability of agricultural land and to encourage efficient urban development patterns. This district is not intended to be used for non-farm residential subdivisions, unless in existence at the time of adoption of this Ordinance.

Generally, an A-1 Agricultural District permits "[s]ingle family dwellings situated or constructed upon a tract containing a minimum of [thirty-five] acres."

The Fettkethers' proposed rezoning was for "R-2" Suburban Residence District, which

> is intended and designed to provide for the development of both low and moderate density single-family dwelling subdivisions in the unincorporated areas of the county by encouraging the maximum use of existing subdivisions, and as an orderly expansion of existing residential development, where public utilities may be available or may be extended at the time of development.

relation to the public health, comfort, safety, and welfare. *See Quality Refrigerated Servs., Inc.*, 586 N.W.2d at 208 (noting a zoning decision "is facially valid 'if it has any real, substantial relation to the public health, comfort, safety, and welfare'" (citation omitted)). This court is mindful that "[e]ven though a challenged zoning [decision] adversely affects a property interest or prohibits the most beneficial use of the property, a court should not, for that reason alone, strike it down." *Id.* (citation omitted).

The Fettkethers did not meet their burden of showing there is a disputed fact about whether the rezoning decision was "unreasonable, arbitrary, capricious or discriminatory, with no reasonable relationship to the promotion of public health, safety, or welfare." *See id.* The Board was entitled to summary judgment, and the writ was properly annulled. We affirm.

**AFFIRMED.**